May it please the court. Good morning. My name is Tierney Skoblik and I represent the appellant William Godoy in this case. I appear before you today for a simple reason. To preserve Mr. Godoy's fundamental right to a fair trial is guaranteed by the fifth and sixth amendments to the United States Constitution. This court should find in favor of Mr. Godoy for two reasons. First, the district court erred in allowing evidence about Mr. Godoy beating a man who is not a named victim, was not interviewed by law enforcement, and never testified at trial. And two, the district court erred in denying Mr. Godoy's motion for a mistrial after unprompted witness testimony accusing that Mr. Godoy would harm him and his family in the future. These erroneous rulings violated Mr. Godoy's right to a fair trial and as a result this court should reverse his convictions and remand for a new trial. Moving into my first issue, the district court erred in allowing evidence about Mr. Godoy beating a man who did not testify, wasn't named as a victim, and was never interviewed as res geste evidence. The crux of res geste evidence is that it is intrinsic evidence relating to crimes that are, quote, so blended or connected with the ones on trial as that proof of one incidentally involves the others, end quote, and that's from the United States v. Campbell case. That means that the evidence must be inextricably intertwined with the crimes at issue at trial and that does not mean that any evidence, even tangentially factually related to the crimes at trial, are automatically admissible as intrinsic. I think a case that's instructive on this point is the United States v. Campbell case. That was a sex trafficking case by forced fraud or coercion and there was testimony there about physical assaults that a named victim had experienced at the hands of the defendant specifically to show that she was forced into prostitution and to rebut Mr. Campbell's defense that physical violence was just simply a part of their normal relationship. That was a key point as to why that evidence was admissible and it was also, I think, directly related because you have point A and point B. You have MA, the named victim, who is testifying directly as to something that she's experienced to say, no, that wasn't just a part of our relationship. He was doing it to force me to do this other thing. How could it have been admissible as intrinsic evidence to demonstrate that there was an air of intimidation, control, threats that was a part of the scheme of controlling these individuals who were the victims in this case? One of the key problems with that is that Mr. Ruiz, one of the witnesses against Mr. Godoy, explicitly testified that he didn't know why Mr. Godoy and Josue would fight in the first place. He was asked about that by the government at trial and he said... Well, is the evidence that they would fight or that he just beat him? There was testimony related to both arguments and physical violence that, you know, often were both part of one another and so he was asked about, you know, acts of physical violence that he saw Mr. Ruiz would and he said that he would leave when fights started happening. He couldn't give a definitive answer as to whether or not he saw beatings occur or what he even knew what they were about because he said, I didn't want to be part of it so I would leave. So he didn't know why those things were going on and I think it's also relevant to point out that Mr. Godoy and Josue are cousins, they're family members and so, you know, he didn't know whether it was related to debt repayment in any way or if it was just some sort of family issue that was going on between the two of them and the government even acknowledged at the pretrial conference that Mr. Ruiz didn't know whether the fights were related to debt repayment. So I think that undermines their argument as to why the evidence was intrinsic in this case. Was there evidence that Mr. Ruiz understood that Josue did owe some money to Mr. Godoy? I don't believe so, Your Honor. I don't think he was asked about that and again, he couldn't give a definitive answer one way or the other. I believe he testified at trial, I would hear some comments about that, but again, then he would leave. So he really didn't have any concrete knowledge of that. So you don't think that's enough to, because if he knew that Josue was in debt to Mr. Godoy and even if he didn't know the exact reason for a particular interaction, would that be enough? Your Honor, I still think that that would fall under the purview of 404B instead because I will say that Mr. Ordonez, the other witness who testified about Josue, did say that he saw that Josue was beaten up by Mr. Godoy, allegedly related to debt repayment. He said that he heard about debt being paid. But again, kind of the same thing where Josue, he's not a named victim here. He was never talking about, yeah, I saw this happen, but it's some guy that Mr. Godoy didn't have a chance to confront in any way who didn't appear at trial and you don't have that direct kind of causal link that was present in the Campbell case, even if Mr. Ruiz had said that as well. But I think it really drives the point home that Mr. Ruiz didn't know one way or the other why these things were going on. And so then the only other person that you have who's saying Josue was getting beaten up because of debt repayment is Mr. Ordonez. No other witnesses testified to that. And Mr. Ordonez himself had credibility issues. And these witnesses were very motivated and biased to give the testimony that they did because they were receiving significant government benefits in exchange for testifying against Mr. Godoy. Moving on to my second issue, the district court erred in not granting Mr. Godoy's motion for a mistrial after extremely prejudicial testimony by Mr. Ordonez. To give some context, the government had been questioning Mr. Ordonez about a Guatemalan statement that Mr. Godoy had made to him. And the government asked, did that cause you to be concerned when that statement was made? And Mr. Ordonez said, yes, it worries me a lot. And this is what I want to say, that if tomorrow something happens to me or my family, that the only person I've ever had problems with is him. I don't have any enemies here. So if something would happen to me or my family in Guatemala or here, he's responsible. In denying the motion for the mistrial, the district court stated that the government had to show that there was a threat made and that he felt threatened. And that's what the testimony was about. But the witness's testimony related to Mr. Godoy's alleged ability to commit future crimes. Now, was there an objection as that testimony came forward? Yes, there was, Your Honor. And I would just like to note that this was an interpreter trial. So that whole statement came out before I had the chance to object. And then we conferenced outside the presence of the jury. And that's when the motion for mistrial was made. The district court focused on the government's question and not on the answer that was given by Mr. Ordonez. And another thing the court has to look at is the factual context surrounding the statement that was made. The statements at issue here by Mr. Ordonez were not just an isolated moment in his testimony. They were part of a pattern of non-responsive narrative and hearsay answers. And I would direct the court's attention to the trial transcript at Volume 1 at 41, 42, 44, 45, 46, and 62 through 66, which all show instances of where objections were made and sustained to Mr. Ordonez's improper testimony. Even after admonishment by the district court, Ordonez continued to give improper responses filled with hearsay and narrative answers. And he essentially was just saying whatever he wanted to say to paint Mr. Godoy in a bad light. And the fact that he was an alleged victim who was testifying against Mr. Godoy does not mean that he was automatically entitled to talk about any bad act. And all of that culminated in Mr. Ordonez basically accusing Mr. Godoy of being a hitman. And that's evidence that... Did you make an argument to the district court that there was an accumulative concern with this man's testimony? Or was it just based on this statement about future violence? I believe, Your Honor, at that time it was just based on the fact that he was alluding to Mr. Godoy's ability to commit future crimes and the prejudicial nature of that statement rather than the cumulative nature. If there are no further questions, I'll reserve the rest of my time for questions. Thank you, Ms. Skoblik. Ms. Larson. Good morning. May it please the Court. My name is Connie Larson. I work for the U.S. Attorney's Office and I'm here on behalf of the United States in the case before the Court today. We're here today to talk about the convictions of William Godoy, specifically as it relates to labor trafficking or forced labor. That's what really the two issues boil down to. And as Ms. Skoblik correctly identified, there are two issues before the Court today. They're both related to statements by two of the victims of forced labor who testified at trial. The first issue, as she identified, is the testimony of Juan Ruiz Rivera related to witnessing the defendant, Mr. Godoy, beating another individual. They were all related, Mr. Rivera, Ruiz, Mr. Godoy, and Josue were all related in some fashion. Cousins is, I believe, what Mr. Ruiz indicated. I'm here to support that the District Court did not abuse its discretion in allowing that evidence to come in. This is for a couple of reasons. The first, as the Court identified, it was admitted as intrinsic evidence, part of the charge of offense. The Court noted that there's a specific element that this covered. The standard for this is laid out in U.S. v. Thomas. I do apologize to the Court. There is a typo in a couple of locations in my brief that indicates Thomas is at 760 F3rd 870. It's actually 879. I did not mean to make that harder for the Court to find, but that's a typo by me. So the standard is that that evidence of that other wrongful conduct gets to come in. It's intrinsic when it provides context, when it completes the story, when it fills gaps in the jury's understanding, and the case goes on to say, in fact, the jury is entitled to hear that type of evidence. What was the testimony about Josue owing money to Mr. Godoy was in debt to him? Specifically as to Mr. Ruiz? No, it seems to me that the reason it's intrinsic is that here's someone who is in debt to Mr. Godoy. Look what happens to him. And that's what Mr. Ruiz sees. And I'm wondering what other evidence other than from Mr. Ruiz was there in the record that the jury heard that Josue was in debt and wasn't paying like Mr. Godoy wanted them all to? Understood. Mr. Corrado-Ordonez testified first. He was the first of the victims to testify. And he was very clear that he also witnessed the beatings of Josue and that Mr. Godoy told him it's because he's not producing enough money. He's not paying like I want him to pay. Wasn't the comment that he wasn't working? Yes, there was some of that. And then that he wasn't working enough or hard enough, I think was also interspersed in there. And I know that Mr. Ruiz indicated, this is at page 183 of the second day of transcript, was he supposed to be paying William some money? Do you know? Well, I would hear comments where they said he had to pay, but he couldn't understand because he was somewhat mentally disabled. And then the conversation kind back and forth. And I asked whether William said Josue owed him money. And Mr. Ruiz did say he wasn't clear on that. That I don't remember. I would hear a hint of these types of conversations and I would go away. But I don't think there's any question that for either of these victims that they did know why the beatings had happened. But I also don't think it's limited to that. I hear the discussion and the argument being made that they had to know that the beatings happened because Josue owed money. I'm not sure it's that narrow. Because I do think that if you watch someone beating someone else, and then they come to you and they say, if you don't pay me, I think the term translated poorly was offered to hit me, offered to beat me a couple of times. But they come to you and say, you're not paying on time. I want you to pay on time. And I'll beat you if you don't. Well, you just watched him beat someone else. Does it really matter the reason? I'm not sure it does. But it's certainly helpful that Ordonez knew that that's why. And that at least Ruiz knew that there was money owed. But I don't think it's that narrow. But it couldn't just be someone else. I mean, I think part of the argument is that if it's a completely unrelated reason why Mr. Godoy would be acting in a violent way toward an individual person that doesn't have anything to do with the forced labor charge, it's probably not relevant to the case. It may not be. I do think it happened during that time frame when those beating threatenings were going on. I think it happened during the time frame when everybody owed money and maybe was feeling a little pressured. If you see the time frames and the hours they were working, I think everyone was under pressure. So I do think, yes, it matters if they knew. But I don't think that's the end of the story. If the beatings happened in your presence to someone else that you knew was in the same boat you were, I don't know that it has to be explicitly stated. This is why I'm hurting him. So the evidence, as we indicated, he told Jose Ruiz that he would hit him if the defendant didn't pay him. It's on page 166. And then the reality is he made that threat a reality because Jose Ruiz watched the defendant do these things. So this is the type of evidence that was allowed by the district court and it should be allowed by the district court. And it follows up an affirmance in United States v. Campbell where the beatings that were administered to gain compliance now factually a little bit different because those beatings were to the person who was testifying. But the fact is the effect on the viewer or the victim is really the same. If you're talking about someone who's being beaten in front of you, does it matter? I mean, certainly it matters whether it's you personally, but it also matters if you're watching that happen to someone else that you know is in your same boat. So notice was given. We had the arguments. It was allowed at trial. And the district court, I believe, correctly determined it belonged in trial as intrinsic because it related to one of the elements. That element being the threat of force or by a scheme or pattern intended to cause the person to believe they would suffer serious harm if they didn't perform. And here what we have is direct evidence of the defendant showing he was willing to hurt someone in order to show that pattern, that willingness to force others to pay. It is interesting, I guess, to note what the jury did with it. They were able to make some discernment as it relates to count two, the forced labor related to Brian Corrado Ordonez. The jury found the defendant guilty in that matter. As to count five, as it relates to Mr. Rivera Ruiz, there was a not guilty verdict on that. So the jury did reach differing results for the same, I would assert, same type of testimony. I know that the defense counsel noted white plume. I would distinguish the white plume case a little bit in that I think third acts, when you're trying to point the finger at a third party and not directly related to the defendant, aren't just not the same. The analysis just isn't the same. But again, this is directly the type of evidence that was admitted as intrinsic in Campbell, similar to the completion of the story standard that's laid out in Thomas. And I believe this evidence is essential to the jury understanding why the victims responded the way they did. As it relates to the second issue, the victim, Brian Corrado Ordonez, supplied evidence during trial. And it was difficult testimony. All of his testimony was difficult. He'd been threatened by the defendant. His mother had been threatened by the defendant. And he had seen Josue be beaten and removed from the house and forced to live in the garage for not paying. So the district court in this case also did not difficult testimony. This part was addressed at the pretrial conference. There was a motion eliminated by defense to keep out long-term psychological impacts. There was a discussion at pages 18 to 19 of the pretrial conference that there was at least some issue that current psychological impacts could come in. Was there any discussion of a limiting instruction of some kind to, particularly after the unresponsive remarks? The motion for mistrial was made. And then the following morning, what essentially was to me a 404B type limiting instruction was offered. We objected, the government objected, because that was not the analysis that should have been that scenario. So a specific limiting instruction as to this behavior other than the general 404B, I do not believe so. So under the five factors, I think the only one probably that bears discussion here today is the limiting instruction as the court noted, but didn't address this specific issue. And in the end, the court has noted the mistrial is a drastic remedy. I don't believe this merits in either count, either allegation does not merit a drastic remedy of a mistrial. I ask you to affirm the district court rulings and the verdict in all respects. If there are no further questions, I will conclude. Thank you, Ms. Larson. I'd like to quickly touch upon a couple things. Judge Kelly, you mentioned that if the evidence from Ordonez and Ruiz was not relevant to debt repayment, then it wouldn't be relevant to the forced labor. I would just mention that Mr. Ordonez testified about an incident where Mr. Godoy hit Josue with a wire cable that had to do with a disagreement that occurred between Josue and Luis Alonso Argujo at work. That didn't have anything to do with debt repayment. It was just about another incident that happened. So that sort of irrelevant testimony about beating Josue was in fact admitted at evidence and should not have been. And then Judge Smith, I believe you were asking about, and correct me if I'm wrong, whether a limiting instruction was made on the same day as the mistrial that was the defense counsel move for a mistrial. I would just say that a motion to strike was made at the same time as well and in the alternative to the motion for mistrial. Thank you. Thank you, Ms. Koblich. And the court also notes that your representation has been performed under the Criminal Justice Act, and the court thanks you for your participation on the panel. Thank you. All right. Madam Clerk, I believe that concludes the scheduled arguments for Wednesday. Yes, Your Honor. All right. That being the case, the court will be in recess until tomorrow morning at 9 a.m.